UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN DULYEA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 1:13-cv-776
Hon. Hugh W. Brenneman, Jr.

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on November 26, 1965 (AR 186).[1] She alleged a disability onset date of May 1, 2008, filing an application for SSI on August 13, 2010 (AR 17, 186). Plaintiff completed the 11th grade, and had previous employment as a cashier, clerk, quality control person at a factory, waitress and bartender (AR 191, 196). Plaintiff identified her disabling conditions as chronic obstructive pulmonary disease (COPD), back pain, panic attacks, depression and migraine headaches (AR 190). An Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 26, 2012 (AR 17-29). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of August 13, 2010 (AR 19). At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the cervical and thoracic spines; COPD; a major depressive disorder; and an anxiety disorder (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine), 3.02 (chronic pulmonary insufficiency), 12.04 (affective disorders) or 12.06 (anxiety related disorders) (AR 20-22). The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours and sit 6 hours in an 8-hour workday with normal breaks; frequently climb ramps and stairs, balance, stoop and crouch; occasionally climb ladders, ropes and scaffolds, crawl and kneel; limited to no concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases or areas of poor ventilation and no exposure to hazards; no over-shoulder reaching with the right upper extremity; limited to doing only simple, routine, repetitive tasks performed in low-stress work environments with no fast-paced or production-rate quotas; claimant requires the option to alternate sitting and standing as needed in the performance of job duties; limited to no contact with the general public and no more than occasional contact with co-workers and supervisors.

(AR 22). The ALJ also determined that plaintiff "has no past relevant work" (AR 28).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national and regional economies (AR 29).

Specifically, plaintiff could perform the following unskilled work in the regional economy (defined as the State of Michigan): assembler (1,900 jobs); machine tender (1,250 jobs); and inspector (1,400 jobs) (AR 29). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time since August 13, 2010, the date the application for SSI was filed (AR 29).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

### A. The ALJ made an erroneous credibility determination.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility

determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

        The ALJ evaluated plaintiff's credibility as follows:

> The claimant testified she had difficulty moving her neck easily due to her neck and upper back pain. She stated she experiences severe tightness in her neck and has throbbing pain up her neck to her skull. In addition, she testified she has taken Vicodin with no success in pain relief and it only caused nausea. Additionally, she stated she continues to experience shortness of breath, takes her medication daily and uses her nebulizer as needed. The claimant testified she quit smoking three to four months prior to the hearing. She further alleged she has headaches three to four times a week and has taken Inderal for treatment, but she indicated that the medication was no longer providing relief. Moreover, the claimant testified she experienced anxiety and participated in outpatient counseling. Further, she stated she does small amounts of housework and has to sit down in between the chores.
>
> In evaluating the claimant's testimony, the claimant demonstrated her range of motion and had good movement. Her previously injured left arm in a 1997 motor vehicle accident was no longer a problem. In addition, she stated her prior right elbow pain had resolved and there were no findings on diagnostic testing (Exhibit 18F). Despite her testimony that she quit smoking, she acknowledged that she smoked a cigarette once every three days. Moreover, she indicated she stopped using her Proair inhaler last summer, but had good symptom control from her other medications. She has taken Xanax for her alleged mental impairments, but was no longer attending any counseling. The claimant was able to drive every day, attend church, get along with friends, and do some gardening with breaks. The claimant testified that she had been released from her last job, because there was not enough work (Exhibit 12F). After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
>         \*     \*     \*
>
> Accordingly, the claimant had allegations of degenerative disc disease of the cervical and thoracic spines, COPD and anxiety disorder. However, as to the claimant's degenerative disc disease, she had minimal findings on diagnostic testing and EMG and nerve conduction studies showed no radiculopathy, despite her

>      complaints of debilitating pain. Moreover, she had a positive response to her
>      treatment regimen of pain medication and injections and she had relatively normal
>      physical exams, with only some neck stiffness. Her straight leg raising was negative,
>      she had normal neurological findings, no excessive emergency room visits for
>      exacerbation of pain symptoms, she never sought or received treatment from a
>      specialist and had no surgical intervention. As to her alleged COPD, chest x-rays
>      showed no evidence of disease and pulmonary function test showed only mild
>      obstruction. Moreover, the claimant had relatively normal physical exams, with her
>      lungs being consistently clear to auscultation; she had only been treated by her
>      primary care provider, with no referral to a pulmonary specialist and had no
>      excessive emergency room visits for exacerbation of respiratory symptoms.
>      Additionally, the claimant continued to smoke, despite being encouraged to quit
>      completely. Addressing the claimant's anxiety disorder, she had minimal treatment
>      and was only treated by non-acceptable medical sources with typical antidepressants
>      in typical doses, she had relatively normal mental status exams, and she had no
>      emergency room visits for exacerbation of psychiatric symptoms, no inpatient
>      hospitalizations, no suicidal or homicidal ideation and was alert and oriented upon
>      exam. In addition, she could manage her personal care, care for her children,
>      specifically her special needs daughter, drive, shop in stores and manage her finances
>      (Exhibits 4E; 10E). While this inconsistency in the claimant's presentation does not
>      mean she is unimpaired, it supports the conclusion that she retains some ability to
>      work.

(AR 22-23, 25-26). The record reflects that the ALJ identified contradictions among the medical records, plaintiff's testimony, and other evidence which support his credibility determination. *Walters*, 127 F.3d at 531.

Plaintiff contends that the ALJ failed to provide an adequate explanation of his ultimate credibility finding under 20 C.F.R. § 416.929(c)(3).[2] The factors to be considered in evaluating symptoms under §416.929 include: (i) the claimant's daily activities; (ii) the location, duration, frequency and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives

---

[2] The Court notes that plaintiff cited 20 C.F.R. § 404.1529(c)(3) rather than § 416.929(c)(3), the regulation applicable to this SSI action.

7

or received for relief of her pain or other symptoms; (vi) any measure the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Here, the ALJ referred to § 416.929 in his decision (AR 22). While the ALJ did not explicitly enumerate the seven factors, he addressed the issues throughout his decision (AR 22-28). Based on this record, there is no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ erroneously found work at step five.

Plaintiff contends that the ALJ made an erroneous determination at step five that was unsupported by the weight of the evidence. While plaintiff frames this issue as involving the step five determination (i.e., whether other work exists in the national economy that plaintiff can perform), her argument is directed at the ALJ's RFC determination which the vocational expert (VE) relied upon at step five. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

Plaintiff contends that the RFC did not address her inability to perform light work, her mental impairments or her migraine headaches. The Court disagrees. The ALJ found that plaintiff had the RFC to perform light work, i.e., "to lift and carry 20 pounds occasionally and 10 pounds frequently" (AR 22). In reaching this determination, the ALJ reviewed plaintiff's medical

history, including her MRI findings, office treatment notes, subjective complaints of pain, a nerve conduction study, an EMG, and clinical evaluations (AR 22-26). The ALJ noted normal or minimal findings on diagnostic testing related to her impairments (AR 25-26). *See* discussion, *supra*. The ALJ also reviewed plaintiff's daily activities, which included managing her personal care, caring for her children (specifically her special needs daughter), driving and shopping in stores (AR 22-23, 25-26). *See* discussion, *supra*. *See also, Walters*, 127 F.3d at 532 ("[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"). Based on this record, the ALJ adopted the October 29, 2010 physical RFC assessment from the state agency medical consultant, Sitamahalakshmi Kondapaneni, M.D., which concluded that plaintiff could perform light work (AR 26, 102-04).

With respect to plaintiff's migraine headaches, the ALJ found that the headaches were not a severe impairment, noting that "the record indicates the claimant had been conservatively treated for headaches," that she had some relief from the headaches with over the counter drugs, and that "no treating or examining source has imposed significant limitations on the claimant's ability to do basic work activities related to her headaches" (AR 20).

Finally, the ALJ's RFC took into account plaintiff's nonexertional limitations (a major depressive disorder and an anxiety disorder (AR 19)), by limiting her "to doing only simple, routine, repetitive tasks performed in low-stress work environments with no fast-paced or production-rate quotas," and to having "no contact with the general public and no more than occasional contact with co-workers and supervisors" (AR 22). Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §

9

416.968(a).  Such work involves simple and routine tasks.  *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000).  *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment).  The vocational expert VE identified unskilled jobs consistent with this RFC (AR 81-88).  Based on this record, the ALJ's RFC is supported by substantial evidence.  This claim of error will be denied.

### C. The ALJ failed to properly weigh the medical opinions of record.

Plaintiff contends that the ALJ failed to give weight to the opinions of a treating therapist, Mark Olthoff, LMSW, and failed to give weight to a consultative examiner, Bruce Fowler, PsyD, LP.  Plaintiff frames this issue as one involving treating physicians and cites cases which define the treating physician rule.  *See* Plaintiff's Brief at pp. 18-19.  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

However, neither Mr. Olthoff nor Dr. Fowler are subject to deference under the treating physician rule, which applies to the opinions of acceptable medical sources. *See* 20 C.F.R. § 416.1513(a). As a therapist, Mr. Olthoff is not an acceptable medical source whose opinions are given deference under the rule. *See Perschka v. Commissioner of Social Security*, 411 Fed. Appx. 781, 787 (6th Cir. 2010) (physical therapist could not provide evidence to establish a listed impairment because a therapist is not an acceptable medical source). While Dr. Fowler is an acceptable medical source, he was not subject to the treating physician rule because he performed only one examination as a consultant (AR 24-25). Non-treating physicians or psychologists who examine a claimant only once are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 416.1527(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir. 2010). *See also*, *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007) (opinion from a doctor who examined a claimant only once and wrote a single physical capacity evaluation is not reviewed as the opinion of a treating physician). This claim of error is without basis and will be denied.[3]

---

[3] While plaintiff states that the ALJ gave the greatest weight to the opinions of non-examining state agency consultants, she does not develop this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

## IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 24, 2014              /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge